By the, Court, Leonard, P. J.
The principal questions in this case arise upon exceptions taken to the charge of the recorder.
The indictment charged the prisoner with defrauding John J. Bobinson. The evidence was that the name was spelt Bobison. The counsel for the prisoner requested the recorder to instruct the jury, if they found there was a difference in the pronunciation, that they must acquit, on the ground of variance.
The recorder charged them that it was for them to determine whether the names had the same sound. If the sound was not the same, it would be their duty to acquit.
The error in the spelling was not observed throughout a long trial, during which the name was often repeated, until near the close of the evidence of the last witness.
It was then discovered that the person defrauded, who was also a witness at the trial, had signed his name at the Surrogate’s office “Bobison.”
We do not know how the sound was given by the witnesses in pronouncing the name, but it appears certain that the difference in the sound did not attract the observation of even the attentive and watchful counsel for the prisoner. We cannot say that the difference in the spelling was such as necessarily to constitute a variance. The *38 question depended on the sound, and was necessarily and properly submitted. (1 Wharton’s Crim. Law, § 258.)
The prisoner’s counsel also insisted that the indictment charged the defendant with inducing Eobinson, by false pretenses, to deliver, and that he did deliver, to the defendant $250, the evidence being that Eobinson did not deliver him any money, but signed a paper which enabled' the defendant to obtain the money from another, and the learned counsel requested the recorder to charge the jury that the defendant could not therefore be convicted.
The charge to the jury was substantially as follows, viz: “If at the time Eobinson executed an assignment to the defendant of his claim upon the county for $300 bounty, the prisoner had in his possession the amount of money mentioned in the indictment, and it was considered by both parties to belong to Eobinson, and the defendant would have paid it over to Eobinson except for the consent of Eobinson that he might retain it, that was just as much an obtaining of the $250 mentioned in the indictment, as if he had paid it over to Eobinson and received it back.” The counsel for the prisoner duly excepted to this proposition.
The evidence was, that Eobinson was about eighteen years of age, and had been unable to obtain his bounty money as an enlisted volunteer without having a guardian appointed. That the prisoner had represented himself to be a captain in a cavalry regiment then in the service, called the Sixth New York cavalry, in which Eobinson desired to enlist, and supposing that the prisoner would be his captain, if he enlisted in that regiment, he had chosen him for his guardian, and the surrogate of the city of New York had, on his application, appointed the prisoner as the guardian; that Eobinson had then enlisted in that regiment and had taken his enlistment oath; that the prisoner showed him a roll of money, and said it was his bounty money; that he had received it; that the *39 prisoner paid him $50, and asked him to let the prisoner keep the rest of it for him till the expiration of his furlough of seven days, when the prisoner would pay it to him; that Eobinson at this time executed an assignment of his $300 bounty to the prisoner; that the prisoner did not in fact receive the bounty money till the next day, and that he then obtained it through the aid of the said assignment.
It does not appear to be essential that the prisoner had not in fact then received the bounty money. The theory suggested by the recorder’s charge can be sustained, I think. The prisoner became the purchaser of Eobinson’s claim to the bounty, and took an assignment of it. The consideration therein expressed was the whole sum of the bounty, $300, and Eobinson thereby acknowledged that he had received it. It was his money. He had the right to receive it. The prisoner said it was Eobinson’s money. There can be no doubt that the prisoner thought it was his, and he was fully justified in his opinion. The prisoner cannot be permitted to urge in his defense that he stated a falsehood when he told Eobinson that the money was his. Holding the prisoner to the truth of his assertion, it may be said that both parties considered it to be the money of Eobinson. The transaction on both sides was based on that understanding. . The want of manual possession by Eobinson does not change the character of the business. The prisoner having persuaded Eobinson to let him keep the money a short time, apparently for its safe custody, cannot now be permitted to impose a new character upon the transaction, different from that which he designedly impressed upon it at the time, in order now to escape the punishment merited by the crime which he stamped upon • the occurrence by what he said and did.
The jury were authorized in finding, under the charge referred to, that the parties considered the money to belong to Eobinson, and that the defendant would have paid it *40 over to him, except for his consent that the prisoner might retain it, and therefore there was no error in the charge.
The victim believed the business to be real, and there can be no good ground for holding that the jury might not believe.that the prisoner meant it for a reality.
Hayes, who was indicted for bigamy, was not permitted to escape from punishment, because the person whom he had produced and represented to his victim to be a minister, and who personated a minister, was not one in fact, nor authorized by law to celebrate the marriage ceremony. (Hayes v. The People, 25 N. Y. R., 390-399; same case in Sup. Court, 15 Abb. P. R., 163.)
The learned counsel for the prisoner also insisted that no offense was charged in the indictment or proven at the trial, because the statement that the prisoner was a captain in the Sixth Hew York cavalry was not a material fact, and no person of ordinary sense or prudence could have been influenced by such a representation.
Under many circumstances such a statement would have little influence. Eobinson expected to serve in a military company to be commanded by the prisoner. He stated it so to the prisoner, and he did not deny it. The position, if real, would have created, in a certain sense, a confidential relation on the part of the prisoner to Eobinson. He would be subject to the orders of the prisoner, and largely dependent on him for the treatment he should receive, and even for food and raiment, justice or tyranny.
In the present instance the fact so stated by the prisoner was material.
These were all the grounds urged before us for a reversal of the conviction.
We are of the opinion, therefore, that the conviction should be affirmed, and that the Court of Sessions should proceed to pronounce sentence. .
Proceedings affirmed.